UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


MAINOR A. VASQUEZ                    :
                                     :
          v.                         :        C.A. No. 13-474ML
                                     :
CAROLYN W. COLVIN                    :
Commissioner of the Social Security  :
Administration                       :


## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge


     This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on June 24, 2013 seeking to reverse the decision of the Commissioner.  On January 31, 2014, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security.  (Document No. 7).  On March 14, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 9).  On March 28, 2014, Plaintiff filed a Reply Brief.  (Document No. 10).

     This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act.  Consequently, I recommend that the Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 7) be GRANTED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSDI on October 8, 2009 alleging disability since August 29, 2007.  (Tr. 144-152).  The applications were denied initially on April 24, 2010 (Tr. 99-102) and on reconsideration on October 14, 2010.  (Tr. 83-88).  Plaintiff's date last insured for DIB is December 31, 2012.  (Tr. 22).  Plaintiff requested an Administrative hearing on October 26, 2010. (Tr. 89).   On November 9, 2011, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel and assisted by an interpreter,  and a vocational expert ("VE") appeared and testified.  (Tr. 41-76).  The ALJ issued an unfavorable decision to Plaintiff on December 16, 2011.  (Tr. 16-31).  The Appeals Council denied Plaintiff's Request for Review on April 23, 2013, therefore the ALJ's decision became final.  (Tr. 1-4).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in his evaluation of the medical opinions and evidence of record, and that his finding that Plaintiff could perform his past work is not supported by the record because the hypothetical posed to the VE was flawed.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's RFC and Step 4 findings are supported by substantial evidence and must be affirmed.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V. APPLICATION AND ANALYSIS

Plaintiff was forty-eight years old on the date of the ALJ's decision. (Tr. 16, 142). Plaintiff completed the sixth grade in Guatemala and is unable to speak English. (Tr. 49, 50). Plaintiff worked in the relevant past as a jewelry packer and stone setter. (Tr. 29). Plaintiff alleges disability due to back, shoulder and knee pain; high cholesterol; high blood pressure and depression. (Tr. 171).

On September 17, 2002, Plaintiff was diagnosed with a non-displaced left patellar knee fracture after falling at work.  (Tr. 222).  On March 31, 2003, Dr. Howard Hirsch cleared Plaintiff to resume work, indicating that Plaintiff's injury had healed, although Plaintiff still suffered from residual symptom magnification and pain.  (Tr. 215).  Dr. Hirsch opined that Plaintiff had no ratable impairment under the AMA guidelines.  Id.

On October 10, 2006, Plaintiff had an MRI of his lumbar spine, because of lower back pain radiating to his left knee resulting in weakness and hyper-reflexia.  (Tr. 223-224).  The MRI indicated that Plaintiff had slight L5 anterolisthesis with bilateral spondylolysis and mild associated bilateral foraminal narrowing with mild L5-S1 disc bulging; L4-5 degenerative disc disease with a diffuse disc bulge and a 5 mm small focus of signal abnormality along the posterior-inferior left para-central margin that was suspicious for a small disc protrusion contacting the left L5 nerve root; and L4-5 facet arthropathy.  (Tr. 224).  An MRI of Plaintiff's left knee on December 1, 2006 indicated no internal derangement, no pathologic marrow edema, and no evidence of knee joint effusion.  (Tr. 225).

On August 24, 2007, Plaintiff consulted with Chiropractor Arianna Iannuccilli, D.C., complaining that back pain interfered with his daily routine, leaving him unable to sleep, walk or bend.  (Tr. 240).  Although Plaintiff was working at the time, he told Ms. Iannuccilli that he was no longer able to work due to pain.  Id.  Dr. Iannuccilli diagnosed a left knee sprain and lumbar segmental dysfunction.  Id.  Through December 2007, Plaintiff went to the Chiropractor one time per week.  (Tr. 226-240).

Plaintiff consulted Dr. John Froehlich on June 23, 2008, for chronic left knee pain.  (Tr. 241-243).  Dr. Froehlich's examination notes indicate that Plaintiff walked with a mild limp.  (Tr.

242). Plaintiff's left knee exhibited extreme sensitivity to touch. Id. Plaintiff had no effusion, and his overall leg alignment appeared to be normal. Id. Dr. Froehlich diagnosed Plaintiff with left knee patellofemoral pain and chronic pain syndrome. Id. He did not believe that Plaintiff was an appropriate candidate for surgery or that additional diagnostic studies were indicated. Id. Dr. Froehlich recommended a simple knee sleeve and encouraged Plaintiff to consult a pain management doctor for medication that might alleviate any pain. Id.

Plaintiff went to the Atmed Treatment Center on October 30, 2009, complaining of lumbar pain for a duration of two years and cervical pain in the past month, with pain radiating to his extremities. (Tr. 246). Plaintiff was diagnosed with sciatica and cervical spasm, and given a prescription for Flexeril and Tramadol. Id.

An x-ray of Plaintiff's lumbar spine on March 2, 2010 showed mild degenerative changes, and an x-ray of his left knee showed no abnormalities. (Tr. 248).

On March 17, 2010, Plaintiff was examined by Dr. Okosun Edoro, a state agency orthopedic consultant. (Tr. 249-251). The examination indicated that Plaintiff walked with a normal gait with no assistive device, his lumbar spine revealed tenderness at L3, the straight leg raise testing was negative with both hips flexed at 80 degrees. (Tr. 250). Dr. Edoro's examination revealed tenderness in the anterior surface of Plaintiff's left shoulder, but he had a full range of motion in both shoulders. Id. Plaintiff experienced pain upon the full abduction of his left shoulder. Id. Dr. Edoro noted that there was no swelling in Plaintiff's left knee, but it was tender, particularly with palpation of the left patella. (Tr. 251). Plaintiff had a full range of motion of his left knee with an increase in pain upon full flexion. Id.

On March 18, 2010, Plaintiff completed the course of physical therapy for his back and was re-evaluated. (Tr. 263). Plaintiff rated his overall pain at a six on a scale of one to ten, and he stated that he was feeling better, and his flexibility and lumbosacral mobility increased since his last examination. Id.

On March 23, 2010, Plaintiff was examined by his primary care physician, Dr. Guillermo Mendoza, and reported chronic, persistent back pain. (Tr. 339). Dr. Mendoza noted that Plaintiff had consistently complained of back pain for a long period of time and that physical therapy had not cured the pain. Id. Plaintiff also complained of weakness in his legs. Id. Dr. Mendoza noted increased tenderness in Plaintiff's lumbar area and was concerned that Plaintiff's quadriceps muscles were atrophying. (Tr. 340). Dr. Mendoza's impression was that Plaintiff suffered from chronic back pain, and he recommended a lumbar MRI and neurosurgical consult. Id.

On March 24, 2010, Dr. Youssef Georgy, a state agency physician, reviewed the medical records and assessed Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 253-260). Dr. Georgy opined that Plaintiff could stand and/or walk for about six hours in an eight-hour day, and that there were no limitations on the amount of time Plaintiff could sit in an eight-hour day. (Tr. 254). Dr. Georgy also opined that Plaintiff could frequently lift up to ten pounds, and could occasionally lift up to twenty pounds. Id. Plaintiff was limited to only occasional stooping, kneeling, and crouching, but frequently as to crawling, balancing, and climbing ramps, stairs, ladders, ropes and scaffolds. (Tr. 255). Plaintiff was to avoid frequent overhead reaching with his left shoulder. (Tr. 256).

An MRI of Plaintiff's lumbar spine on March 26, 2010 revealed mild lumbar disc disease, most pronounced at L4-5. (Tr. 261-262). On April 1, 2010, Plaintiff met with Dr. Mendoza to review the lumbar spine MRI results. (Tr. 344-345). Dr. Mendoza's impression was that Plaintiff

suffered from a disc bulge at L4-5, and he recommended a neurosurgical consultation to consider the possibility of surgery or, most likely, steroidal injections.  Id.

On April 15, 2010, Plaintiff's physical therapy treatment plateaued and he was discharged. (Tr. 264).  Plaintiff's range of motion in his lumbar spine increased, and he reached normal limits. Id.  The treating physical therapist noted that all of Plaintiff's therapy goals were achieved except that Plaintiff reported that his pain rated a five on a scale of one to ten.  Id.

Plaintiff's cervical spine x-ray on April 20, 2010, indicated mild to moderate cervical spondylitic and discogenic change, limited extension but no instability.  (Tr. 272).  That day, Plaintiff consulted with Dr. Ronald Hillegass of the Brain and Spine Neurosurgical Institute, complaining of pain in his lower back, neck and left leg.  (Tr. 273-274).  Plaintiff reported experiencing pain since 2006, with no history of trauma.  Id.  Plaintiff reported increased pain, particularly when he was sitting, standing, bending, lifting or twisting.  Id.  Plaintiff reported that he suffered from chronic neck pain for the prior five months.  Id.  Dr. Hillegass' examination revealed tenderness in Plaintiff's cervical spine from C3-C7 and tenderness in Plaintiff's left superior medial border of his scapula.  (Tr. 274).  Plaintiff exhibited a full range of motion with pain on abduction and rotation.  Id.  The examination revealed tenderness in Plaintiff's left rotator cuff. Id.  Neurologic examination of the upper extremities revealed no sensory changes, and a motor examination showed no motor changes in Plaintiff's hands.  Id.  The lumbosacral spine examination indicated tenderness from L4 -S1, but Plaintiff had no tenderness in his right sacroiliac or sciatic notch area.  Id.  Plaintiff showed mild pain on bilateral lateral flexion and rotation.  Id.  Neurologic examination of the lower extremities revealed no sensory changes to light touch, but Plaintiff's straight leg raise testing was positive bilaterally at seventy degrees for posterior thigh and calf pain,

and Plaintiff's tension test was positive.  Id.  Dr. Hillegass diagnosed a mild chronic disc problem at the L4-5, and due to the persistence of pain over time, suggested that Plaintiff might be a good candidate for injections.  Id.

Plaintiff returned to Dr. Hillegass on April 27, 2010, when the doctor noted that Plaintiff had a mild chronic disc problem at L4-5.  (Tr. 275-277).  Plaintiff's cervical spine showed mild evidence of arthritis, most likely secondary to the mild disc problem.  (Tr. 277).  Dr. Hillegass indicated that additional tests were not necessary and suggested that Plaintiff might benefit from a program of stretching exercises at home.  Id.

On May 3, 2010, Plaintiff went to Dr. Mendoza, complaining of chronic left shoulder pain which had not improved from the use of anti-inflammatories.  (Tr. 346-347).  Dr. Mendoza diagnosed left shoulder bursitis.  Id.

On May 18, 2010, Plaintiff consulted a physiatrist[1] (rehabilitation physician), Dr. Joseph Doerr, to evaluate his complaints of diffuse spine and extremity pain.  (Tr. 351-352).  Plaintiff reported a gradual onset of diffuse spine and pain in his extremities, which he was not able to attribute to any particular incident or trauma.  Id.  Plaintiff reported continuing pain throughout his spine, for which he sought several evaluations and treatment options, including physical therapy.  Id.  Plaintiff reported that his shoulder pain increased with any kind of reaching over his head, and that over-the-counter medications gave minimal relief.  Id.  Plaintiff reported that his neck pain increased with any awkward movements, and his spinal pain increased with any prolonged standing or sitting.  Id.  Dr. Doerr indicated that Plaintiff appeared to be healthy and without gross deformity, atrophy or postural abnormalities.  Id.  Dr. Doerr noted that Plaintiff's lateral calf and right hand

---

[1]  Defendant mistakenly identifies Dr. Doerr as a psychiatrist in its brief.  (See Document No. 9 at p. 8).

showed decreased sensation, but otherwise Plaintiff was intact. Id. Plaintiff's musculoskeletal examination showed good strength and functional ranges of motion of all distal pivots. Id. Plaintiff displayed moderate restriction of his left shoulder to resisted elevation and to internal rotation secondary to pain. Id. Spurling's maneuver on his left shoulder caused pain to radiate down Plaintiff's arm. Id. Dr. Doerr questioned the straight leg raise test results on Plaintiff's right side, but noted that the left side was positive at seventy degrees. Id. Dr. Doerr diagnosed Plaintiff with a myofascial strain/sprain of his shoulder, cervical, and thoracic areas, and recommended treatment including electronic stimulation, ultrasound and therapy. (Tr. 352).

Plaintiff visited the Brain and Spine Neurosurgical Institute on May 19, 2010, and received a left L4 and L5 transforaminal epidural steroid injection from Dr. Christopher Ottiano. (Tr. 367). Plaintiff returned to Dr. Ottiano on June 9, 2010, reporting that he experienced improvement immediately after the injection, but maintained only modest improvements in his left leg pain. (Tr. 368-369). Dr. Ottiano gave Plaintiff more injections. Id. On June 30, 2010, Dr. Ottiano noted that the injections had provided Plaintiff some relief from lower extremity radicular pain, particularly in his left leg, but Plaintiff's symptoms recurred rather quickly. (Tr. 370-371). Dr. Ottiano reviewed Plaintiff's March 2010 MRI results and confirmed his earlier diagnosis that Plaintiff's symptoms resulted from the degeneration at his L4-5. Id. He suggested that a neurosurgical evaluation may be useful for further treatment. Id.

On July 21, 2010, Plaintiff consulted Dr. Sumit Das, a Neurosurgeon, for an opinion if he would be a good candidate for lumbar fusion surgery. (Tr. 372-373). Dr. Das noted that Plaintiff's cervical spine pain radiated to his left shoulder, and lumbar spine pain radiated to his bilateral sacroiliac joints and down both of his legs. Id. Plaintiff was within normal limits for range of

motion of all four extremities and deep tendon reflexes, and he exhibited no gross motor or sensory deficits.  Id.  Dr. Das recommended a discography to determine if Plaintiff would benefit from lumbar fusion surgery.  (Tr. 373).

On September 13, 2010, Plaintiff's discography was abnormal.  (Tr. 364-365).  The L3/4 and L5/S1 imaging indicated normal findings and pressure parameters and no reproduction of concordant pain.  (Tr. 365).  The L4/5 revealed internal disc disruption and indicated a flatter pressure/volume slope.  Id.

Plaintiff returned to Dr. Das on September 15, 2010 to discuss the discogram results.  (Tr. 374-375).  Upon examination, Plaintiff's midline lumbar spine and bilateral sacroiliac joints were tender to palpation.  Id.  Plaintiff's left patella showed a deformity.  Id.  There were no deficits from the inspection and palpation of Plaintiff's right and upper extremities, but Plaintiff displayed decreased sensation to touch in the upper part of his left leg.  Id.  Plaintiff's gait was normal, and his coordination and range of motion were normal within all four extremities, exhibiting no gross instability.  (Tr. 375).  Dr. Das noted degenerative changes in Plaintiff's lumbar spine and he opined that Plaintiff would be a good candidate for a L4-5 posterior lumbar interbody fusion.  Id.  He discussed the options with Plaintiff, including the risks and benefits of surgery, and Plaintiff requested time to consider his options, agreeing to get back to Dr. Das with his decision regarding surgery.  Id.

The record contains no further evidence of treatment with any specialists for back pain. Plaintiff did complain of chronic back pain to Dr. Mendoza on July 6, 2011 (Tr. 435-436) and reported chronic left knee pain in September 2011.  (Tr. 447-448).

A.      **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 4. (Tr. 29-31). At Step 2, the ALJ found that Plaintiff's left knee and left shoulder impairments, and degenerative back and neck disc impairments were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1521 and 416.921. (Tr. 24-26). The ALJ, however, did not find at Step 3 that these impairments, either singly or in combination, met or medically equaled any of the Listings. (Tr. 26). As to RFC, the ALJ found that Plaintiff could perform a range of work at the light exertional level with left arm restrictions and postural limitations. (Tr. 27). Based on this RFC and testimony from the VE, the ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Social Security Act because he was capable of performing his past relevant work as a jewelry packer and stone setter as customarily performed in the economy. (Tr. 29).

**B.      The ALJ's Non-disability Finding is Not Supported by Substantial Evidence**

The ALJ relied heavily upon the assessments of the nonexamining physicians, Dr. Georgy and Dr. Laurelli, in making his RFC finding. (Exs. 10F, 18F and 20F). He found that these assessments were entitled to "significant probative weight" because they are "consistent with and supported by the record as a whole" and "are not contradicted by a competent, well-supported and detailed assessment from a treating or examining source." (Tr. 28).

In his assessment, Dr. Georgy opined that Plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) was limited in his upper extremities. (Tr. 254). He also opined that Plaintiff was limited in his ability to reach in all directions (including overhead) and should avoid frequent left shoulder overhead reaching. (Tr. 256). However, despite these limitations on pulling and reaching, Dr. Georgy also opined that Plaintiff could frequently climb ladders, ropes and scaffolds which is facially inconsistent. (Tr. 255). Dr. Georgy provides very

little support for his assessments so it is impossible to glean any explanation for this apparent inconsistency. See 20 C.F.R. § 404.1527(c)(3) ("because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions" and thus "the better an explanation a source provides for an opinion, the more weight we will give that opinion").

Despite the lack of support and explanation, the ALJ elected to give Dr. Georgy's assessment significant probative weight and based his RFC finding on it. The ALJ did not, however, pose a hypothetical to the VE that was consistent with his ultimate RFC finding. In particular, it is undisputed that the hypothetical posed to the VE did not include the limitation to only occasional operation of arm controls with Plaintiff's left non-dominant arm included in the RFC finding. (Tr. 29, n.4 and p. 67-68). The ALJ seeks to minimize this disconnect in two ways. First, he asserts that "it is clear that th[e] jobs [identified by the VE] did not involve the operation of arm controls." (Tr. 29, n.4). However, the ALJ provides no supporting citation or explanation for this lay opinion. Id. Second, the ALJ asserts that it appears from the findings of the state agency physicians that the limitation of arm controls was related to limited overhead reaching of the left shoulder. Id. While they may be related, Dr. Georgy generally opined that Plaintiff's ability to push and/or pull (including operation of hand controls) was limited in upper extremities. (Tr. 254). Although the form asked for a description of the "nature and degree" of such limitation, Dr. Georgy did not provide any description. Id. Thus, the ALJ's conclusion that the restriction was limited to overhead reaching with the left shoulder is speculative.[2]

---

[2] Dr. Doerr, Plaintiff's treating physiatrist, examined Plaintiff on May 28, 2010 and indicated that his shoulder pain is "clearly worse with any kind of reaching." (Tr. 356).

While this is a close case and the ALJ's non-disability finding may well be reaffirmed on remand, the discrepancies discussed above preclude me from finding that the ALJ's conclusions are supported by substantial evidence. In addition to the lack of supporting explanation in his assessment, Dr. Georgy rendered his assessment on March 24, 2010 without the benefit of Dr. Doerr's May 18, 2010 physiatric evaluation, the March 26, 2010 MRI of Plaintiff's spine, the records of epidural injections administered by Dr. Ottiano in May and June 2010, and Dr. Das' September 15, 2010 report identifying spinal fusion surgery as a "viable opinion" for Plaintiff to consider. Moreover, there was a material disconnect between the hypothetical upon which the VE based his vocational opinions and the RFC assessment ultimately found by the ALJ and an insufficient record upon which to conclude that this was a harmless error. Accordingly, I conclude that a remand is warranted and so recommend.

## VI. CONCLUSION

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 7) be GRANTED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED. Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 9, 2014